**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

Anoma Food Services LLC d/b/a Thalaiva's Indian Kitchen

Plaintiff,

vs.

Thalaivas Indian N Chinese Kitchen, LLC d/b/a Thalaiva's Restaurant

and Ameen Khan

Defendants.

Civil Action No. _______________

**COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT AND OTHER CLAIMS**

Anoma Food Services LLC, doing business as Thalaiva's Indian Kitchen, is a family-owned restaurant in Park Ridge, Illinois, well-known for its authentic South Indian cuisine. Plaintiff owns a U.S. federal trademark registration for the mark THALAIVA'S INDIAN KITCHEN (U.S. Reg. 7,614,402) and a pending application for THALAIVA'S INDIAN KITCHEN & design (U.S. App. Ser. No. 99025962). In 2024, Defendant Khan came into Plaintiff's restaurant multiple times asking to license Plaintiff's trademarks so he could open his own franchise, and Plaintiff said no each time. Nevertheless, Defendants proceeded with impunity, opening two Thalaiva's restaurants in Wisconsin, with more apparently on the way soon. As the original owner of the THALAIVA'S trademark for Indian cuisine, Plaintiff brings this action to stop the deliberate and intentional counterfeiting and infringement of its trademark and to preserve the goodwill in its unique name.

## THE PARTIES

1. Anoma Food Services LLC, doing business as Thalaiva's Indian Kitchen ("Plaintiff" or "Thalaiva's Park Ridge") is a family-owned restaurant, with two locations in Park Ridge, Illinois—one at 116 Main Street and the other at 110 S. Prospect Avenue.

2. Plaintiff is well-known in Park Ridge and throughout Chicagoland and beyond for serving authentic Kongunadu cuisine, rooted in the traditions of South India's Kongu region.

3. Plaintiff is an Illinois domestic corporation with its registered place of business at 116 Main Street, Park Ridge, Illinois 60068.

4. Plaintiff was formed on May 9, 2018, and it has operated its original restaurant in Park Ridge since June 8, 2018.

5. Defendant Thalaivas Indian N Chinese Kitchen LLC is a Wisconsin company with its registered place of business at 3213 S. Ridge Crest Court, New Berlin, Wisconsin 53151 ("Thalaiva's Wisconsin"). Thalaiva's Wisconsin was formed less than a year ago, on August 23, 2024.

6. Ameen Khan ("Defendant Khan") is the founder and managing member of Thalaiva's Wisconsin. On information and belief, Khan lives at 3213 S. Ridge Crest Court, New Berlin, Wisconsin 53151.

7. After visiting Thalaiva's Park Ridge numerous times, Defendant Khan opened two copycat restaurants in Wisconsin under the THALAIVA's name (both operate under the names (Thalaiva's Restaurant and/or Thalaiva's Indian Cuisine). One restaurant is located at 1920 Parmenter St. in Middleton, Wisconsin 53562. The other is located at 300 North Century Ave. in Waunakee, Wisconsin 53597. In addition, Thalaiva's Wisconsin has publicly announced plans to open at least one other Thalaiva's restaurant in the coming months.

## JURISDICTION AND VENUE

8. This is an action for federal trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1), 1116(d) and 1117(b); trademark infringement in violation of 15 U.S.C. §§ 1114(1); and cybersquatting in violation of 15 U.S.C. §§ 1125(d).

9. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. The exercise of personal jurisdiction by the Court over Defendants is appropriate in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

11. This Court has personal jurisdiction over Defendants because Defendants deliberately target residents of Illinois and this District. For example, Defendants operate an Internet website at <www.thalaivaskitchen.com> that is accessible by and targets residents of Illinois and this District.

12. Defendants have purposefully availed themselves of the benefits of doing business in Illinois by transacting business with customers in Illinois and by soliciting a license or franchise agreement with Plaintiff prior to launching a restaurant that infringes its trademark. In undertaking these deliberate acts, including all facts and allegations set forth below, which are incorporated herein by reference, Defendants had fair warning and could reasonably anticipate that they could be called before a federal district court in Illinois.

13. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because the claims arose in this District and a substantial part of the events giving rise to the claims occurred in this District. Moreover, Defendants transact business in this District, have committed infringing acts in this District, and have engaged in activities that subject Defendants to the

jurisdiction of this Court. Finally, because Defendants are subject to personal jurisdiction in this District, venue is appropriate in this District.

**THE ORIGINAL THALAIVA'S RESTAURANT AND THE THALAIVA'S TRADEMARK**

14. Thalaiva's Park Ridge launched the original Thalaiva's restaurant on Main Street in Park Ridge on June 8, 2018, and it has been operating there successfully for nearly seven years.

15. Thalaiva's Park Ridge serves authentic Kongunadu cuisine from South India's Kongu region. Restaurants that serve this type of Indian food are rare in the United States, especially in the Midwest. As a result, Indian-Americans with roots in South India travel many miles—from Wisconsin, Indiana, Michigan, Iowa, and elsewhere—for a taste of "home cooking" from Thalaiva's.

16. Thalaiva's Park Ridge chose the name Thalaiva's, which means "boss" or "leader" in the Tamil language of Southern India. Plaintiff's founders and owners liked the word "thalaiva" because it conveyed to its customers that it is a Tamil restaurant (i.e., that its food and owners are from the Tamil Nadu State in India).

17. The Main Street restaurant has been very successful, tripling its customer base in just a few short years as its reputation grew among fellow Tamils in the Midwest region. The restaurant also survived the pandemic, due primarily to its carry-out services. Growth in the last few years has been significant, such that Thalaiva's Park Ridge just opened its second, much larger, location around the corner from the first location.

18. The owners of Thalaiva's Park Ridge believe their restaurant provides not only an excellent culinary experience but also a partly spiritual one. They are religious, and they aim to apply morals from their religion to create a family-friendly environment built on respect, culture

and integrity. As a symbol of their beliefs and culture, the restaurants feature various statutes of gods and idols that are important to the owners' religion.

19. Thalaiva's Park Ridge promotes its restaurant in many ways, including with a website located at the domain <www.thalaivasindiankitchen.com>.

20. Thalaiva's Park Ridge is also active on Instagram, frequently posting on its account @thalaivasindiankitchen.

21. As its reputation and the value of its brand continued to grow, Thalaiva's Park Ridge took steps to protect its unique trademark. Specifically, on February 22, 2022, Thalaiva's Park Ridge filed an application with the United States Patent and Trademark Office to register the word mark THALAIVA'S INDIAN KITCHEN for restaurant services in International Class 43.

22. On June 4, 2024, the USPTO issued a Notice of Allowance for the application, and on August 30, 2024, Thalaiva's Park Ridge filed a Statement of Use, which claimed use in commerce of the mark as early as January 1, 2018.

23. On December 17, 2024, the USPTO issued U.S. Registration No. 7,614,402 for the word mark THALAIVA'S INDIAN KITCHEN for "Restaurant and café services; Restaurant information services; Restaurant reservation services; Restaurant services; Restaurants; Fast-food restaurant services; Mobile restaurant services; Reservation of restaurants; Self-service restaurant services; Take-out restaurant services" ("Plaintiff's Trademark Registration") (Exhibit A).

24. Plaintiff's Trademark Registration provides conclusive evidence of the validity of its mark, the national scope of protection, and Plaintiff's exclusive right to use the mark for restaurant services. The Registration disclaims the words INDIAN KITCHEN as descriptive, such that THALAIVA'S is the clearly dominant and distinctive element of the mark.

25. On February 1, 2025, Thalaiva's Park Ridge also filed an application to register the Thalaiva's logo shown below (the "Chef's Hat Logo") in Class 43 for the same restaurant services as claimed in the Registration (U.S. App. Ser. No. 99025962) ("Plaintiff's Logo Application") (Exhibit B):



Plaintiff's Logo Application claims use of the Chef's Hat Logo at least as early as January 1, 2024. The Logo Application is active and is awaiting examination by the USPTO.

26. The THALAIVA'S INDIAN KITCHEN trademark, together with all common law rights to THALAIVA'S and the rights embodied in Plaintiff's Trademark Registration and Plaintiff's Logo Application, are referred to herein as "Plaintiff's Trademarks".

**DEFENDANTS AND THEIR INFRINGING ACTIVITIES**

27. Defendant Khan, is the founder and, upon information and belief, the sole member of Thalaiva's Wisconsin.

28. Defendant Khan is deliberately using Plaintiff's Trademarks with full knowledge that Thalaiva's Park Ridge is the prior owner of the THALAIVA'S mark.

29. Beginning some time in 2024, Defendant Khan began to frequent Thalaiva's Park Ridge. During multiple visits to Thalaiva's Park Ridge, Defendant Khan asked Plaintiff's owners if they would be wiling to grant him a license or a franchise to operate a Thalaiva's restaurant.

Plaintiff's owners responded that they were not interested in licensing or franchising their restaurant to Defendant Khan.

30. In late December 2024, a customer telephoned Thalaiva's Park Ridge to place a takeout order. During that call, Plaintiff realized that this customer was intending to order from another Thalaiva's restaurant in Wisconsin.

31. This was how Plaintiff learned that Defendants had opened a Thalaivas restaurant in Middleton, Wisconsin on or about October 30, 2024. At the time, Plaintiff did not know that Defendant Khan was behind the new restaurant, but Plaintiff was immediately concerned about the infringement and the impact on its THALAIVA'S brand.

32. Therefore, Plaintiff's owners, through a mutual friend, set up a meeting with the owner of Thalaiva's Wisconsin for January 4, 2025 with the goal of discussing their infringement concerns. When the meeting was set, Plaintiff still did not know that Defendant Khan was the owner of the new restaurant. Plaintiff's owners, therefore, travelled to Wisconsin for the in-person meeting. It was at this meeting that Plaintiff's owners were shocked to learn that Defendant Khan was the person behind Thalaiva's Wisconsin.

33. Not only had Defendant Khan visited Thalaiva's Park Ridge numerous times, and inquired about a trademark license each time, but his last visit to Thalaiva's Park Ridge was just two weeks before the January 4, 2025 meeting. During this last visit to Thalaiva's Park Ridge, Defendant Khan had again inquired about a trademark license without disclosing that he had already opened Thalaiva's Wisconsin's restaurant in Middleton in October of 2024.

34. At the January 2025 meeting, Defendant Khan acknowledged that he had previously requested a license to use the THALAIVA'S mark from Plaintiff, and he admitted that he had decided to use the mark even though Plaintiff had refused to grant a license. In conveying

his plan to Plaintiff to proceed without a trademark license, he acknowledged that, for Plaintiff, operating their restaurant was their passion but for him, it was "just business, so don't expect ethics from me." Indeed, Defendant clearly knew it was illegal for him to use the THALAIVA's name, or he would not have repeatedly asked for a trademark license or franchise agreement.

35. At the January 4, 2025 meeting, Plaintiff also expressly notified Defendants of Plaintiff's Trademark Registration.

36. On January 29, 2025, Plaintiff sent a written cease-and-desist letter to Defendants via overnight courier to both Defendant Khan's home and his place of business (delivery of which was confirmed to both locations by the courier). In that letter, Plaintiff also reminded Defendants that Plaintiff is the owner of Plaintiff's Trademark Registration, and Plaintiff told Defendants in no uncertain terms that they must immediately cease-and-desist infringing Plaintiff Trademarks; but Defendants continued to willfully infringe.

37. Even after the January 4, 2025 meeting and after receiving Plaintiff's January 29, 2025 cease-and desist letter, on or about February 6, 2025, Plaintiff opened its second Thalaiva's restaurant in Waunakee, Wisconsin.

38. Defendants are using trademarks for their business that are identical to, or virtually identical to, Plaintiff's Trademarks (as shown below):

| **Plaintiff's Trademark** | **Defendants' Infringing Marks** |
|---|---|
| THALAIVA'S INDIAN KITCHEN | THALAIVA'S RESTAURANT<br>THALAIVA'S INDIAN CUISINE |

| Plaintiff's Trademark | Defendants' Infringing Mark |
| --- | --- |
| | |

39. This is not an innocent and unintentional infringement. Defendants are using the identical THALAIVA'S trademark with full knowledge of Plaintiff's prior rights. In fact, the only reason for Defendants to adopt a logo with a chef's hat that looks confusingly similar to Plaintiff's Chef's Hat Logo is to create an association with Thalaiva's Park Ridge. Not only does Defendants' logo feature Plaintiff's distinctive chef's hat, but it also uses a brown color palette that is similar to the colors used by Plaintiff.

40. Thalaiva's Wisconsin promotes its restaurants in numerous ways, including through a primary website located at the domain <www.thalaivaskitchen.com>. Defendants also operate a second website at <www.thalaivasindiangrill.com> and another at <www.orderthalaivasrestaurants.com >. The domains for these three websites are referred to herein, collectively, as the "Infringing Domains".

41. The Infringing Domains are confusingly similar to the domain for Plaintiff's website at <www.thalaivasindiankitchen.com> ("Plaintiff's Domain").

42. Plaintiff has also identified a registration for the domain name thalaivasrestaurants.com. The registrant name for that domain name is privacy protected; however, Plaintiff has reason to believe that this domain was also registered by Defendants.

43. Defendants also adopted social media handles that are confusingly similar to Plaintiff's. For example, Defendants are using the Instagram handle @thalaivasrestaurants. This is designed to confuse consumers who are familiar with Thalaiva's Park Ridge and its Instagram account @thalaivasindiankitchen.

44. Defendants have deliberately copied Plaintiff's Trademarks and have done so with the intention to confuse consumers and trade off the goodwill that Plaintiff has painstakingly developed in its marks.

**DEFENDANTS' ACTIVITIES HAVE CONFUSED CONSUMERS AND HARMED PLAINTIFF'S BRAND**

45. Considering that Defendants intended to confuse consumers and the trade into believing they are affiliated with Thalaiva's Park Ridge, it is no surprise that actual confusion has occurred.

46. For example, Plaintiff's owners have spoken to a number of customers in their restaurants who have said they tried the food at the restaurant they believed to be "Plaintiff's other location" in Wisconsin and the food was not as good. These people, of course, were referring to Thalaiva's Wisconsin.

47. In addition, Plaintiff has fielded calls and questions from numerous people in the Indian community asking why they made the decision to expand to Wisconsin.

48. Plaintiff has also received communications that were intended for Thalaiva's Wisconsin. For example, on February 23, 2025, Plaintiff received an email at its primary email

address (thalaivasindian@gmail.com) congratulating "Thalaiva's Indian & Chinese team on [its] new location!"

49. Not only has there been actual confusion, but Plaintiff is concerned about actions Thalaiva's Wisconsin has taken that negatively impact the THALAIVA's brand. For example, Thalaiva's Wisconsin has advertised free food if customers do not like the taste. This offer implies that the quality of Defendants' food is questionable. Plaintiff would never make such an offer, because Plaintiff proudly stands by the quality of its food and expects that customers will feel the same way—as they have for many years.

50. In addition, in October 2024, Thalaiva's Wisconsin petitioned the License Ordinance Committee for the Middleton, Wisconsin City Council for a license variance to sell cigarettes and vaping products at its Middleton restaurant location. This act of asking for permission to sell these products impacts the THALAIVA'S brand negatively, as smoking and vaping are discouraged in the religion of Plaintiff's owners.

51. In sum, Defendants' activities are not only causing confusion, but they are diminishing the value of the THALAIVA'S brand.

**COUNT I**
**FEDERAL TRADEMARK COUNTERFEITING**
**15 U.S.C. §§ 1114(1), 1116(d) and 1117(b)**

52. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 as though fully set forth herein.

53. Defendants' acts constitute trademark counterfeiting in violation of Section 32(1), 34(d) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1116(d) and 1117(b).

54. Plaintiff is the rightful owner of Plaintiff's Trademark Registration for THALAIVA'S INDIAN KITCHEN.

55. Defendants, without authorization from Plaintiff, have used, and continue to use counterfeits of Plaintiff's Trademarks, including THALAIVA'S RESTAURANT and THALAIVA'S INDIAN CUISINE. Defendants' use of Plaintiff's Trademarks constitutes use of spurious designations that are identical to or substantially indistinguishable from Plaintiff's registered trademarks.

56. Defendants use Plaintiff's Trademarks in connection with the same categories of services claimed in Plaintiff's Trademark Registration.

57. Defendants' use of counterfeits of Plaintiff's Trademarks by its very nature is likely to cause confusion, mistake, or deception as to the source of Defendants' goods.

58. Defendants intentionally used, and continue to use, these spurious designations knowing they were counterfeit.

59. Defendants' acts have occurred in interstate commerce and have caused, and unless restrained by this Court, will continue to cause serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

60. These damages include treble damages for trademark counterfeiting as set forth in 15 U.S.C. § 1117(b) and potential statutory damages for trademark counterfeiting as set forth in 15 U.S.C. § 1117(c).

**COUNT II**
**FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114(1)**

61. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 60 as though fully set forth herein.

62. Defendants' acts constitute infringement of a registered service mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

63. Plaintiff is the rightful owner of Plaintiff's Trademark Registration, which constitutes proof of Plaintiff's valid and exclusive trademark rights and its entitlement to protection under the Lanham Act.

64. Defendants have used, and continue to use, Plaintiff's Trademarks in United States commerce in connection with the goods and services claimed in Plaintiff's Trademark Registration.

65. Defendants' unauthorized use of Plaintiff's Trademarks is likely to cause confusion, mistake, or deception as to the source, sponsorship or approval of Defendants' services by Plaintiff, or as to the affiliation, connection or association between Plaintiff and Defendants.

66. The consuming public are likely to believe that Defendants' services originate with Plaintiff; are licensed, sponsored or approved by Plaintiff; or are in some way connected with or related to Plaintiff, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

67. Defendants have used Plaintiff's Trademarks with full knowledge of Plaintiff's prior rights, and they are continuing to use Plaintiff's Trademarks. Defendants' continued use of Plaintiff's Trademarks constitutes intentional, malicious and willful infringement of Plaintiff's trademark rights and entitles Plaintiff to enhanced damages.

68. These infringing acts have occurred in interstate commerce and have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

**COUNT III**
**FEDERAL UNFAIR COMPETITION**
**15 U.S.C. § 1125(a)**

69. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 68 as though fully set forth herein.

70. Defendants' acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71. Defendants' unauthorized use in interstate commerce of Plaintiff's Trademarks, including its common law trademark rights, is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services in violation of Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A).

72. These acts have occurred in interstate commerce and have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

**COUNT IV**
**CYBERSQUATTING**
**15 U.S.C. § 1125(a)**

73. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 72 as though fully set forth herein.

74. Defendants' acts constitute cybersquatting in violation of the federal Anti-Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d)

75. Plaintiff is the rightful owner of Plaintiff's Trademarks, which are distinctive for restaurant services.

76. Defendants' Infringing Domains are confusingly similar to Plaintiff's Trademarks and Plaintiff's Domain, and Defendants were aware of this at the time they registered and began using the Infringing Domains.

77. Defendants registered and used the Infringing Domains with a bad faith intent to profit from Plaintiff's Trademarks. Defendants intended to exploit Plaintiff's Trademarks for financial gain and to divert consumers to their own restaurants and websites.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff asks for judgment against Defendants as follows:

1. That Defendants and their officers, agents, servants, employees, attorneys and all those in active concert with them, be preliminarily and permanently enjoined from all further unauthorized use of Plaintiff's Trademarks or any other marks that could reasonably be deemed confusingly similar to Plaintiff's Trademarks.

2. That, pursuant to 15 U.S.C. § 1117, including as an "exceptional case" under 15 U.S.C. § 1117(a) and for counterfeiting under 15 U.S.C. § 1117(b) (calling for treble damages), Plaintiff be awarded monetary relief for Defendants' trademark infringement, including (a) all profits received by Defendants from restaurant sales under the infringing marks, less proven elements of cost or deduction; (b) all damages sustained by Plaintiff as a result of Defendants' actions (up to three times the amount of actual damages); or (c) if Plaintiff so elects at any time before final judgment is rendered by the Court, instead of actual damages and profits, statutory damages of $2,000,000 per counterfeit mark per type of service sold, offered for sale, or distributed.

3. That the Court declare that Defendants' service mark infringement was willful.

4. That, pursuant to 15 U.S.C. § 1117(d), Plaintiff be awarded actual damages and profits or statutory damages for cybersquatting of up to $100,000 per domain name and that the Court order the transfer of the Infringing Domains to Plaintiff or cancellation of the domains.

5. That the Court declare that Defendants committed acts of unfair competition and deceptive business and trade practices under common and statutory law.

6. That the Court declare that Defendants are jointly and severally liable for all damages assessed against any Defendant.

7. That Plaintiff be awarded pre-judgment interest on all damages awarded by the Court.

8. That Plaintiff be entitled to recover its reasonable attorneys' fees and costs of suit.

9. That Plaintiff be awarded any and all such other and further relief as this Court shall deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: May 1, 2025

By: /Tom Monagan/

Richard B. Biagi – IL Bar No. 6274572
Thomas M. Monagan – IL Bar No. 6278060
NEAL & MCDEVITT, LLC
2801 Lakeside Drive
Suite 201
Bannockburn, IL 60015
rbiagi@nealmcdevitt.com
tmonagan@nealmcdevitt.com
docketing@nealmcdevitt.com

*Attorneys for Plaintiff*